Edward G. AMAND, Plaintiff,

v.

The PENNSYLVANIA RAILROAD COMPANY, a corporation of the State of Pennsylvania, and the Baltimore and Ohio Railroad Company, a corporation of the State of Maryland, Defendants.

Civ. A. No. 533–54.

United States District Court,
D. New Jersey.

March 25, 1955.

Powell & Davis, by James M. Davis, Jr., Mount Holly, N. J., for plaintiff.

Archer, Greiner, Hunter & Read, by F. Morse Archer, Jr., Camden, N. J., Sydney R. Prince, Jr., Baltimore, Md., of counsel, for defendants.

MADDEN, District Judge.

In 1951, one Arthur F. Naylor started a suit in this Court, Civil 457–51, seeking injunction and substantive relief against the defendant here, Pennsylvania Railroad Company, to prevent the Railroad from entering into a settlement with certain officers of the National Brotherhood of a wage contract dispute and seeking adjudication of his rights and the rights of others in the same class, under the contract and an award for damages. The main point in dispute under the contract being the assertion by Naylor and others that they, as engineers on Pennsylvania's lines, were entitled to an additional day's pay when, without emergency, they operated Pennsylvania's trains upon the tracks of a foreign railroad and that the Brotherhood officials were attempting to settle the matter with the Railroad in violation of the rights of the members.

In that matter, upon a motion to dismiss, the Court retained jurisdiction for a period of 90 days in order to give opportunity to all affected to institute action before Division I of the National Railroad Adjustment Board, it being the opinion of the Court that Congress had intended that body to have exclusive jurisdiction of such disputes under the holding by the Supreme Court in Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795. Subse-

quently, the plaintiff, Naylor, and others in the same class brought their action before Division I of the National Railroad Adjustment Board where such actions are still pending as far as this Court knows. Thereafter, this Court dismissed the action, reserving the right to reopen in the event the Board disposed of that matter upon procedural grounds without disposing of the basic issues in dispute between the parties. The parties to that action have entered a stipulation to that effect.

In the present action, the plaintiff, Edward G. Amand, brings what was formerly known as an action for strict discovery against the Pennsylvania Railroad Company, hereinafter called Pennsylvania, and the Baltimore and Ohio Railroad Company, hereinafter called Baltimore. Amand alleges that he is and has been a train engineer of Pennsylvania, that under the terms of the contract existing between the Brotherhood representing him (the same as Naylor) and Pennsylvania he is entitled to an extra day's pay when he, without the existence of any emergency and upon the orders of his superiors, drives his train over foreign tracks. That he has done so constantly over the tracks of Baltimore, and that, consequently, Pennsylvania owes him additional pay. He further alleges that he believes there is in existence a subrogation agreement or working arrangement between Pennsylvania and Baltimore whereby Baltimore has undertaken to pay all or a part of whatever Pennsylvania is compelled to pay under such contract and conditions.

Amand does not seek in this Court money damages from either Pennsylvania or Baltimore, for to do so would be directly in conflict with the Court's ruling in the Naylor case, but what he does desire from the processes of this Court is, by discovery, to examine Pennsylvania and Baltimore by depositions and otherwise so that such material discovered here may be presented to Division I of the National Railroad Adjust-

ment Board in an action which he is desirous of commencing before that body for the amount claimed. He attempts to justify the need for such action here by alleging (Paragraph 11, Complaint):

"The procedure in force and effect by the rules of the National Railroad Adjustment Board, Division 1 * * * do not permit the attendance of and the giving of testimony by witnesses or the use of compulsory process or the time-honored right of cross-examination, but under the practice currently enforced before said Board, it is necessary for a claimant to initiate his claim before said Board by the filing of which is in effect a pleading, which is called a submission, and which need not be verified. The claimant is required to include in his submission all evidence which he wishes the Board to consider in support of his claim save only such as becomes proper by way of rebuttal. The respondent-employer is by the same rules of practice required to file an answer which contains, though unverified, the evidence upon which it relies to defeat the claim of the claimant and the claimant may submit as in the case of a replication any rebuttal evidence made necessary by the defenses raised in the answer. No opportunity is afforded by rule or in fact for a party to obtain evidence and documents from his adversary party."

Pennsylvania has moved to dismiss upon several grounds. First, that since the adoption of the Federal Rules of Civil Procedure, 28 U.S.C.A., the Court no longer has jurisdiction of suits for pure discovery. Second, that this is a suit to ultimately enforce a penalty and pure discovery does not lie to aid in the enforcement of a penalty. Third, that a bill for discovery can only be brought in aid of a judicial proceeding and cannot be maintained in aid of an action before an administrative body. Fourth, that there is exclusive jurisdiction in the Railroad Adjustment Board under the Railway Labor Act.[1]

Baltimore, likewise, moves to dismiss and in addition to the grounds urged by Pennsylvania in which it joins with Pennsylvania, it argues that the complaint upon its face discloses that plaintiff has not made Baltimore a defendant in his action before the Railroad Adjustment Board and has no intention of doing so and that pure discovery will not lie against a mere witness.

The Court will look first to the question of jurisdiction for, naturally, if this would be answered adversely to plaintiff all other questions would be moot. Has this Court, by the adoption of the Federal Rules of Civil Procedure, lost jurisdiction of a matter of pure discovery when the jurisdictional amount of the Court, to wit, $3,000, exclusive of interest and costs, is not sought in the action before the Court?

It might be well to examine what the writers have to say regarding the intentions of the framers of the rules in this respect. Most of their comments are found in their discussions of Rules 26 to 37 inclusive under the title of "Depositions and Discovery."

In seeking out the rules and their effect on the prior practice we come to Rule 1, as follows:

"These rules govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity, with the exceptions stated in Rule 81. They shall be construed to secure the just, speedy, and inexpensive determination of every action."

Commenting on this Professor Moore said, in Moore's Federal Practice, 2nd Edition 1948, Volume 2, page 5:

"The Equity Rules of 1912, as amended, represented modern

1. 45 U.S.C.A. § 153.

thought on procedure to a great extent. In addition they had been tested by more than twenty years of application in the federal courts. Accordingly, the Advisory Committee drew upon them extensively and the Federal Rules incorporate many of their features. *There can, however, be no doubt that the Federal Rules, which provide a united and carefully designed procedure for actions formerly at law and suits in equity completely supersede the Equity Rules."* (Emphasis supplied.)

And further, at page 9:

"By virtue of the rule making Act of 1934 the Federal Rules supersede or modify federal statutes in force on September 16, 1938, the effective date of the rules, which are in conflict with them."

And further on in the same work, speaking of discovery, Professor Moore said, in Volume 4, page 1028:

"The Judicial Code of 1948, which revised and enacted Title 28 of the United States Code into positive law, fully recognized that, so far as the practice governed by the Federal Rules is concerned, the Rules had covered the area formerly covered by the statutes discussed supra by incorporating some of their principles, and modifying, adapting, and expanding other provisions. In other words, the Code recognized that the Federal Rules had, *for actions formerly at law or in equity, superseded the prior federal statutes dealing with depositions and discovery."* (Emphasis supplied.)

And speaking of discovery Ohlinger, in his revised edition (1948) on Federal Practice, Volume 3, page 524, said:

"This and subsequent rules incorporate, modify and broaden the provisions for depositions under U.S.C., Title 28, Sections 639 (Depositions de bene esse; when and where taken; notice), 640 (Same; mode of taking), 641 (Same; transmission to court), 644 (Depositions under dedimus potestatem and in perpetuam), 646 (Deposition under dedimus potestatem; how taken). These statutes are superseded in so far as they differ from this and subsequent rules. U.S.C., Title 28, Section 643 (Depositions; taken in mode prescribed by State laws) is superseded by the third sentence of Subdivision (a)."

And at page 525:

"While the old chancery practice limited discovery to facts supporting the case of the party seeking it, this limitation has been largely abandoned by modern legislation."

And at page 533:

"3. Changes effected by Title V, 'Depositions and Discovery'; *'Depositions shall be taken only in accordance with these rules.'* It has been said that one of the purposes of the Rules was to adopt the best of the modern English and state practices for discovery: Canuso v. [City of] Niagara Falls (D.C.N.Y.), 4 F.R.D. 362. (Emphasis supplied.)

"Title V of the Rules is headed 'Depositions and Discovery.' Two matters which, as pointed out above, have hitherto been kept separate and distinct, are thus merged in the rules under this title. Subdivision (a) expressly authorizes the taking of depositions upon oral examination or written interrogatories 'for the purpose of discovery or *for use as evidence in the action* or for both purposes.' (Emphasis supplied.) The Advisory Committee comments:

" 'This rule freely authorizes the taking of depositions under the same circumstances and by the same methods whether for the purpose of discovery or for the purpose of obtaining evidence.'

The Rules under Title V authorize the taking of depositions of parties and witnesses regardless of any such circumstances as absence or departure from the jurisdiction, sickness or infirmity. No order of Court is necessary, except where the plaintiff serves notice for the taking of depositions within 20 days after commencement of the action.

"The former use of depositions solely for the purpose of securing competent evidence for use on the trial is thus broadened to include discovery, and under the present rule notice of examination and interrogation before a notary, or some other officer, displaces, in all cases to which the rules apply, the former bill in equity. *The old procedure for discovery is definitely outmoded.*" (Emphasis supplied.)

In one of the most comprehensive statements regarding the old practice and the effect of the new rules thereon is found in Barron and Holtzoff's "Federal Practice and Procedure," Volume 2, at page 264.

"Before the rules there were several provisions for depositions but their purpose was restricted to preservation of proof and any discovery which resulted was only accidental and incidental. Equity Rule 58, the only federal provision intended for discovery was cumbersome and restricted.

"The basic philosophy of the present federal procedure is that prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged.

"The discovery procedure adopted by Rules 26 to 37 enables a party not only to narrow the issues and obtain evidence for use at the trial, but also to discover information as to where and how such evidence can be obtained. The scope of discovery has been made very broad and the restrictions imposed upon it are directed chiefly at the use of, rather than the acquisition of, the information discovered."

And as a most integral part thereof, the footnote under Note 10, likewise starting at the base of page 264:

"10. Former discovery procedure restrictive.

" 'Before one can realize what the new rules as to discovery mean, one should understand in a general way the sort of discovery which has heretofore been available in the federal courts. There were just four sources or authority for any proceeding involving discovery before trial in the federal courts. Those four sources were two statutes and two equity rules. The two statutes were 28 United States Code, section 639, dealing with depositions de bene esse, and 28 United States Code, section 644, (1940 Ed., since repealed) dealing with depositions under dedimus potestatum and in perpetuam. The two equity rules were Rule 47, providing for depositions in exceptional cases, and Rule 58, which was entitled 'Discovery' (Both set out in section 645, note 82). The two statutes applied in both law and equity cases while the two rules were limited to equity cases. As a matter of fact there was no discovery as such provided by the two statutes. They did not purport to do more than authorize depositions before trial for the purpose of obtaining proof, not for the purpose of discovery. Discovery was a mere accidental incident. The need for taking depositions as proof was the condition for taking them. The need for discovery had nothing to do with the matter. Thus under section 639, dealing with depositions de bene esse, depositions were allowed when the witness lived more than one hundred miles from the

place of trial, or was on a voyage at sea, or about to go out of the United States, or when the witness was aged or infirm, etc. Discovery is just as valuable in other cases as in those mentioned. Perhaps ten or twenty per cent of one's witnesses might fall under these classifications; if so, eighty or ninety per cent of the witnesses would be immune from depositions, so that the discovery value of depositions taken de bene esse was very small and uncertain. Section 644, for depositions under a dedimus or for perpetuation of testimony, prescribed that depositions could be taken only to prevent a failure or delay of justice. Those were limitations placed upon the taking. The special need for taking must appear from the circumstances of the particular case. And the statute also prescribed that the deposition must be taken according to common usage. * * * Furthermore, in law cases there was no discovery whatever, incidental or otherwise, in respect to documents. These could be called for in advance of the trial only by subpoena duces tecum in connection with depositions taken under one of the two statutes. There was therefore the same primary restriction upon discovery of documents as upon discovery by oral examination. Discovery of documents was purely incidental to the taking of proof. Finally, there was no provision for discovery and no discovery intended, regarding any tangible thing, or land, or physical or mental condition; and there was no provision for obtaining admissions of fact or of the genuineness of documents. There was no recourse to state statutes for discovery under the conformity act, because it was held that the federal statutes provided a complete system of deposition procedure, and the conformity act was therefore not applicable.

" 'In equity cases there were the two rules mentioned, in addition to the two statutes which applied in equity as well as at law. Equity Rule 47 authorized the taking depositions of named witnesses for use at the trial for good and exceptional cause for department from the general rule, the general rule being 'no depositions.' The purpose here was not discovery but obtaining proof. The cases where the need for discovery was greatest might be those where the need for proof was the least, or vice versa.

"Equity Rule 58 is the only provision in the entire federal system intended for discovery. That rule provided for three things, general discovery, discovery of documents and admissions. So far as general discovery is concerned, it was very inadequate in its method; it provided for only written interrogatories (which) are very ineffective methods for discovering anything. * * *

" 'Secondly, Equity Rule 58 is very restricted in its scope. It was available only to ascertain facts relating to the party's own case, not those of his adversary's case. It is good for attack but not for defense. It is nothing, in fact, but the discovery available under the old chancery bill of discovery. The discovery most needed is denied, that least needed is permitted. Further, Equity Rule 58 was very restricted as to the class of deponents; only parties could be interrogated, not mere witnesses. In the case of a corporate party only one officer could ordinarily be interrogated as to the same matter. As to the discovery of documents there was the same restriction in scope as applied to the interrogatories. The parties are required only to produce documents relative to the case of the party seeking discovery, and not of the adversary.

" 'As to admission, Rule 58 was very narrow. It applied only to the execution and genuineness of documents, not to facts in general.

" 'Such was the system of federal discovery practice when these new rules were drawn,—a most inadequate system. * * * What the federal rules have done has been to remove practically all restrictions as to the right of discovery. Any party may take the depositions of any other party or any witness, either for discovery or for use as evidence, or for both purposes.' Sunderland, The New Federal Rules, 1938, 45 W.Va.L.Q. 5.

" 'The equity theory of discovery involved the balancing of the mischiefs of surprise at the trial against the danger of perjury should each party be apprised of his opponent's evidence and therefore denied any discovery of the opponent's case.' Sunderland, Proceedings of Cleveland Institute, 1938, p. 281 citing Wigram, Law of Discovery (London 1836) Section 347.

"Old bill of discovery.

. " 'It is a commonplace that prior to 1912 when the Federal Equity Rules, including Rule 58, were adopted, the only available method of obtaining information from an adversary was the bill of discovery. Although bills of discovery arose out of the common-law disqualification of a party to testify in a case, centuries of practice made this bill the sole means of obtaining discovery from an adversary even after the disqualification had been abrogated. The bill of discovery took various forms. Thus, a party to an action at law could bring a collateral bill in equity against his adversary in order to obtain information to be used as evidence in the action. A plaintiff in equity could insert interrogatories in his bill, and a defendant in equity could obtain information from the plaintiff by means of a cross-bill for discovery, but in no event could a party obtain discovery without becoming a plaintiff nor could discovery be obtained from the adverse party without making him a defendant.' 21 N.C. L.Rev. 3."

And finally, the statement of Judge Chesnut in Coca-Cola Co. v. Dixi-Cola Laboratories, Inc., D.C., 30 F.Supp. 275, at page 277:

"One important object of the new rules was to require simplicity and brevity in the pleadings, but with the most ample provision for facilities of discovery of facts before trial, so that surprise at the trial and possible miscarriage of justice thereby could be avoided. Prior to the adoption of the new rules federal procedure at law was largely lacking in legal machinery for the discovery of facts prior to the trial; and federal equity procedure provided in this respect only interrogatories under rule 58, and in connection with a bill of discovery. 28 U.S.C.A. following section 723. But the practice in many of the states had been liberalized and modernized in this respect, and it was one of the purposes of the F.R.C.P. to adopt the best of the modern English and state practices for discovery. To this end the F.R.C.P. now provides in rules 26 to 37, both inclusive, every facility by way of (a) depositions before and pending trial; (b) interrogatories to parties; (c) discovery and production of documents and things for inspection, copying or photographing; (d) physical and mental examination of persons, and (e) admission of facts and genuineness of documents."

 This Court is, therefore, directed to the conclusion that the full and complete discovery now provided by the Federal Rules of Civil Procedure takes place under the supervision of the ju-

dicial body entrusted or charged with the trial of the ultimate issues and there must be a jurisdictional issue before the Court. Consequently, this Court no longer has jurisdiction to entertain a bill for pure discovery like is presented herein and the motion to dismiss must be granted.

Counsel will prepare an order.